## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MOHAMMED T. AKHTAR,** | |
| **Plaintiff,** | **No.** |
| **v.** | |
| **TARGET CORPORATION,** | |
| **Defendant.** | **<u>Jury Trial Demanded</u>** |

## <u>COMPLAINT</u>

NOW COMES Plaintiff, MOHAMMED T. AKHTAR ("Plaintiff"), by and through his counsel, Kevin Vodak, of Council on American Islamic Relations, Chicago Chapter (CAIR-Chicago), and complaining of Defendant, TARGET CORPORATION ("Defendant"), states as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff seeks redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as a result of discrimination he suffered during his employment with Defendant based on his religion and national origin.

## <u>JURISDICTION AND VENUE</u>

2.      This Complaint alleges violations of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964; therefore, jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 and § 1343.  Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      On November 25, 2008, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (a copy of the charge is attached hereto as Exhibit A).

4. Based on an investigation into Plaintiff's allegations, on April 19, 2012, the EEOC issued a determination that the evidence established reasonable cause to believe that Defendant discriminated against a class of individuals, including Plaintiff, because of their Pakistani and/or Indian national origin and their religion. The EEOC also found reasonable cause to believe that Defendant discharged Plaintiff because of his Pakistani national origin and his Muslim religion. (*See* Exhibit B – EEOC Determination.)

5. After conciliation efforts were conducted by the EEOC and were unsuccessful, the EEOC issued a Notice of Right to Sue on August 28, 2013, which was not received by Plaintiff until October 2, 2013 due to the EEOC using an outdated address. (*See* Exhibit C – Notice of Right to Sue.)

6. The violations alleged herein occurred in the Northern District of Illinois; therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Plaintiff, MOHAMMED T. AKHTAR, is Muslim male of Pakistani national origin who resides in Naperville, Illinois.

8. Defendant, TARGET CORPORATION, is a Minnesota corporation with numerous places of businesses located in Illinois. Defendant is an employer for purposes of 42 U.S.C. § 2000e(b), as Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day for twenty (20) or more calendar weeks in the current and preceding calendar years.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

9.      Plaintiff began working for Defendant in approximately October 2004 as a Team Member in the store located at 175 W. Army Trail Road, Glendale Heights, Illinois ("Glendale Heights store").  Based on his excellent performance, in late 2005, Plaintiff was promoted to a Target Protection Specialist.

10.     During his tenure as a Target Protection Specialist, Plaintiff performed security functions at the Glendale Heights store, which entailed working with Asset Protection supervisors, other Team Members, and local law enforcement to minimize theft and fraud.  As reflected in his performance evaluations, throughout his tenure as a Target Protection Specialist, Plaintiff performed in a manner which exceeded his job requirements.

11.     In approximately May 2007, the District Manager promoted Plaintiff to the position of Assets Protection Specialist and transferred him to the store located at 1235 E. Higgins Road, Schaumburg, Illinois ("Schaumburg store").  As an Assets Protection Specialist, Plaintiff became responsible for leading the Target Protection Specialists at the Schaumburg store to minimize theft and fraud, with his primary work location being in the security room rather than out on the sales floor.

12.     Throughout the time that he was employed at the Schaumburg store, Plaintiff directly reported to Jennifer Hernandez ("Hernandez"), Executive Team Lead-Assets Protection.

13.     On a regular and continuous basis from May 2007 through February 8, 2008, Hernandez subjected Plaintiff to harassment because of his Muslim religious affiliation and/or Pakistani national origin.  This harassment consisted of derogatory comments, including but not limited to:

        a.  Continuously referring to Plaintiff as a "terrorist";

3

    b.   Advising Plaintiff that Hernandez's fiancé, who was employed as a police officer, would not sell Plaintiff a gun because Plaintiff is "a Muslim";

    c.   Complaining to Plaintiff that Indian food has a bad odor;

    d.   Referring to Middle Eastern and South Asian men who appeared in the store and wore a beard as "Osama bin Laden";

    e.   Regularly making offensive remarks regarding South Asian cashiers at the Schaumburg store, such as commenting on their appearance in a negative manner and mocking a Pakistani female cashier who suffered from mental health issues; and

    f.   On the day that Plaintiff was discharged from his employment, Hernandez advised another supervisor that she "better go check [Hernandez's] car – [Plaintiff] may have placed a bomb underneath it."  Hernandez proceeded to look under her vehicle in the parking lot with the other supervisor after making this comment.

14.    Throughout the time that Plaintiff was employed at the Schaumburg store, Defendant's supervisors and Store Manager witnessed Hernandez's harassing treatment of Pakistani and Indian employees but failed to take any action to prevent or remedy the hostile work environment.

15.    On February 8, 2008, Defendant terminated Plaintiff's employment based on an incident which occurred on January 19, 2008, when Plaintiff observed a customer steal four (4) products offered for sale by Defendant, as she took the items off of the shelf and proceeded to "return" them for funds on her credit card without ever purchasing the merchandise.

16.    When Hernandez and the Schaumburg Store Manager discharged Plaintiff, they

4

indicated that the customer stated that she would sue Defendant because a police detective spoke to her regarding the January 19, 2008 incident, and as a result Plaintiff's employment must be terminated.

17.     Subsequent to Plaintiff's discharge, Defendant contended that Plaintiff's employment was terminated because he violated Defendant's policies when failing to contact the District Assets Protection Leader ("DAPTL") for approval prior to apprehending the customer, and he previously received a Final Warning for failing to follow Defendant's policies.

18.     Contrary to Defendant's contentions, Plaintiff adhered to proper policies and procedures prior to contacting the Schaumburg Police Department on January 19, 2008, including the following proactive steps:

     a.  Observing the customer enter the area without possession of the merchandise she "returned" at the service desk;

     b.  Observing the customer selecting the merchandise from the shelf;

     c.  Maintaining sufficient surveillance of the customer to observe the location of the merchandise;

     d.  Observing the customer not pay for the merchandise and instead take the merchandise to the service desk;

     e.  Obtaining videotaped evidence of the customer's retail theft;

     f.  Attempting to contact both Hernandez and the DAPTL, to no avail;

     g.  Receiving authorization from an Executive Team Leader-Assets Protection at the Glendale Heights store to contact the police department, who agreed that this was the proper course of action; and

     h.  Not attempting to apprehend the customer without approval from the DAPTL.

19.     Hernandez falsely accused Plaintiff of violating Defendant's policies based on the January 19, 2008 incident, when both a Target Protection Specialist and the service desk employee who interacted with the customer believed that the customer was guilty of retail theft. When the Schaumburg Police Department requested the videotaped evidence, rather than properly prosecute the January 19, 2008 offense, Hernandez advised the officers that Defendant no longer wanted to proceed with the case.

20.     On January 16, 2008, Hernandez issued Plaintiff a Final Warning for failing to follow all of the Assets Protection Directives on January 9, 2008, when he apprehended a suspect who he believed was attempting to steal cosmetics, but the suspect ultimately did not possess the merchandise.

21.     On information and belief, Hernandez elected not to issue Final Warnings to similarly situated non-Muslim, non-Pakistani Assets Protection employees when they apprehended suspects who were ultimately not found to have committed retail theft.

22.     On information and belief, Hernandez has engaged in discriminatory treatment against other minority Assets Protection employees, such as terminating the employment of an African-American Target Protection Specialist for failing to remain at the front door, when a Caucasian Target Protection Specialist engaged in the same conduct and was not discharged.

## COUNT I – TITLE VII – HOSTILE WORK ENVIRONMENT

23.     Plaintiff reasserts and realleges paragraphs one (1) through twenty-two (22) as if fully set forth herein.

24.     Defendant's manager subjected Plaintiff to a hostile work environment based on his religion, Islam, and national origin, Pakistani, through severe and/or pervasive actions, thereby negatively altering the conditions of his employment and creating an abusive working

6

environment.

25. Despite knowledge of the harassing treatment of Plaintiff and other South Asian and Muslim employees, Defendant failed to take any appropriate action to prevent or correct the discriminatory work conditions imposed on Plaintiff.

26. The aforementioned acts and omissions of Defendant were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff, because of his religion and national origin, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

27. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MOHAMMED T. AKHTAR, requests that this Honorable Court enter judgment in his favor and against Defendant, and enter an Order awarding the following relief:

A. All wages and benefits he would have received but for the discrimination;

B. Compensatory damages;

C. Punitive damages;

D. An award of costs, as provided by F.R.C.P. 54(d)(1);

E. An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b); and

F. Such other relief as the Court deems equitable and just.

## COUNT II – TITLE VII – DISCRIMINATORY DISCHARGE

28.     Plaintiff reasserts and realleges paragraphs one (1) through twenty-two (22) as if fully set forth herein.

29.     Based on his excellent performance reflected in his written evaluations, Plaintiff performed in accordance with the reasonable expectations of Defendant.

30.     Defendant treated Plaintiff less favorably than similarly situated non-Muslim and non-Pakistani employees, who were not disciplined or discharged when they apprehended suspects for retail theft and the suspects were ultimately found not to be in possession of stolen merchandise.

31.     The reasons proffered for Plaintiff's discharge remain pretextual for discrimination, and Hernandez facilitated the discriminatory termination of Plaintiff's employment due to her biased views against Plaintiff's religion and national origin.

32.     The aforementioned acts of Defendant were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff because of his religion, Islam, and national origin, Pakistani, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

33.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MOHAMMED T. AKHTAR, requests that this Honorable Court enter judgment in his favor and against Defendant, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

8

B.  Compensatory damages;

C.  Punitive damages;

D.  An order mandating that Defendant reinstate Plaintiff to his prior position, or front pay in lieu of reinstatement;

E.  An award of costs, as provided by F.R.C.P. 54(d)(1);

F.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b); and

G.  Such other relief as the Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

34.     Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Respectfully submitted,
MOHAMMED T. AKHTAR, Plaintiff,

By:     /s/Kevin Vodak_____
KEVIN VODAK
Attorney for Plaintiff

Attorney #: 6270773
Council on American-Islamic Relations,
Chicago Chapter (CAIR-Chicago)
17 N. State Street, Suite 1500
Chicago, Illinois 60602
Ph:     312.212.1520
Fax:    312.212.1530

9